# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

**SHAWN SOUTHERLAND,**

                **Plaintiff,**

        **v.**                                                    **9:02-CV-708**
                                                                  **(GLS)**

**GLEN S. GOORD, Commissioner, NYS
DOCS; BRYAN MALONE, Inspector
General, NYS DOCS; THOMAS SANDERS,
Superintendent, Adirondack Correctional
Facility, Ray Brook, NY; K.J.
MCLAUGHLIN, Deputy Superintendent,
Adirondack Correctional Facility, Ray
Brook, NY; Lt. HOUSTON, Adirondack
Correctional Facility, Ray Brook, NY;
K. LANTHIER, Corrections Officer,
Adirondack Correctional Facility, Ray
Brook, NY,**

                **Defendants.**

---

**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PLAINTIFF:**

SHAWN SOUTHERLAND
Plaintiff, *Pro Se*
2454 Hughes Avenue
Apt.  3-C
Bronx, New York 10458

**FOR THE DEFENDANTS:**

HON. ELIOT SPITZER
Attorney General
State of New York
207 Genesee Street
Utica, New York 13501

·GERALD J. ROCK, ESQ.
Assistant Attorney General

**Gary L. Sharpe**
**U.S. District Judge**

## DECISION AND ORDER

### I. Introduction

Plaintiff *pro se* Shawn Southerland brings this action under 42 U.S.C.

§§ 1983, 1985(3) and 1986 against defendants Glenn S. Goord, Bryan

Malone, Thomas Sanders, K.J. McLaughlin, Lt. Houston and K. Lanthier

(collectively "defendants") for violating his constitutional rights under the

First and Fourteenth Amendments.  *See Am. Compl. ¶ 7, Dkt. No. 6.*  The

defendants move to dismiss the complaint under Rules 12(b)(5) and

12(b)(6) of the Federal Rules of Civil Procedure.  Upon consideration of the

papers and applicable law, the defendants' motion to dismiss is **GRANTED**

and the complaint is hereby **DISMISSED**.

### II.  Procedural History

Southerland filed this action on May 28, 2002.[1]  *See Compl., Dkt. No.*

---

[1] In addressing the merits of Southerland's claims under 42 U.S.C. § 1983, the court finds that his claims under 42 U.S.C. §§ 1985(3) and 1986 fail for the same reasons herein.

1. On June 17, District Judge Lawrence E. Kahn issued an order directing Southerland to amend his complaint in compliance with Fed. R. Civ. P. 8 and 10. *See Dkt. No. 4.* On July 11, Southerland filed an amended complaint. *See Dkt. No. 6.* In response, the defendants[2] moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(5) and 12(b)(6). *See Defs.' Br., Dkt. No. 20.* Southerland has filed his opposition to the motion. *See Dkt. No. 24.* The defendants have not filed a reply brief and the time to do so has expired.

## III. Facts[3]

Southerland was assigned to work in the mess hall program at Adirondack Correctional Facility (ACF). *See Am. Compl. ¶ 14, Dkt. No. 6.* During this assignment, he alleges that Lanthier constantly harassed and threatened him. *See id.* On November 19, 2001, Southerland contends

---

[2]With the exception of Malone and Houston. Attorney Rock has moved on behalf of these defendants who have not been served. Since there has been no appearance filed, the issue of whether they were properly served is not squarely before this court. However, Southerland concedes that he unsuccessfully attempted to procure the addresses of these retired defendants. In any event, the claims against these defendants are meritless and warrant dismissal. *See, e.g., U.S. v. Vazquez,* 145 F.3d 74, 80 (2d Cir. 1998);*see also Jessamy v. City of New Rochelle,* 292 F. Supp. 2d 498, 503 & n.4 (S.D.N.Y. 2003).

[3]Southerland filed two lawsuits in May 2001 in this District under civil action numbers 01-cv-675 (675) and 01-cv-1011 (1011). *See 01-cv-675, Dkt. No. 42; see also 01-cv-1011, Am. Compl., Dkt. Nos. 10, 13.* Action 675 involved Houston, Annucci and Malone, while action 1011 only involved Sanders. *See id.* The court takes judicial notice of these pleadings since Southerland has referenced them in his amended complaint. *See Am. Compl. ¶ 11, Dkt. No. 6.*

3

that Lanthier filed a false misbehavior report and fired him from his mess hall job. *See id.* ¶ *15.*

On November 28, Hearing Officer Houston[4] found Southerland guilty of disobeying a direct order and placed him in the Special Housing Unit (SHU). *See id.* ¶¶ *16, 17.* Southerland also lost all his privileges for thirty days. *See id.* ¶ *18.* Southerland asked Houston to modify the punishment in order to permit him to contact his daughter in compliance with a family court order.[5] *See id.* ¶ *19.* The request was denied. *See id.*

Southerland filed an appeal with Sanders and McLaughlin. *See id.* ¶ *27.* In addition, he wrote Sanders a letter requesting a transfer and expressing his fear of retaliation.[6] *See id.* ¶ *28.* Southerland informed Goord,[7] Annucci and Malone of his fear of retaliation prior to the issuance

---

[4]Southerland contends that Houston was biased because he was a named defendant in a previously filed lawsuit. That suit involved information placed in his pre-sentence report by the Time Review Committee (TRC), of which Houston was a member. *See id.* ¶¶ *11, 24, 25, 34, 35.* Southerland sent TRC members a letter on November 14, 2001, just five days prior to the issuance of Lanthier's misbehavior report, informing them that he would seek punitive damages. *Id.* ¶ *24.*

[5]The family court order allowed him to call his daughter every week, however, for financial reasons he only called her every other week.

[6]McLaughlin is alleged to have responded to Southerland's letter and to his appeal after Southerland was placed in SHU. *See id.* ¶ *28.*

[7]Defendant Goord contends that he was not personally involved in the alleged constitutional violation. Southerland only mentions Goord in Paragraph 29 contending that he wrote to him "concerning his safety, and transfer..." *See Am. Compl.* ¶ *29.* It is well settled that

4

of Lanthier's false misbehavior report.  *See id.* ¶¶ *29, 43.*  Finally,

Southerland contends that the defendants failed to make advance copies

of his court papers free of charge.  *See id.* ¶ *38.*  He also claims that

inmates are arbitrarily denied use of the law library at ACF by the

correction officers.  *See id.* ¶ *41.*

## IV.  Discussion

### A.   *Rule 12(b)(6) Motion to Dismiss*

### 1.   *Standard of Review*

Rule 12(b)(6) provides that a cause of action shall be dismissed if a

complaint fails "to state a claim upon which relief can be granted."  When a

party makes a Rule 12(b)(6) motion, a court must limit itself to a

consideration of the facts asserted "on the face of the complaint and to any

documents attached as exhibits or incorporated by reference."  *Cosmas v.*

*Hassett*, 886 F.2d 8, 13 (2d Cir. 1989) (citations omitted).  "The task of the

court in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal

feasibility of the complaint, not to assay the weight of the evidence which

---

the personal involvement of a defendant is a prerequisite for the assessment of damages in a §
1983 action, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), and that the doctrine of
respondeat superior is inapplicable to § 1983 claims. *Polk County v. Dodson*, 454 U.S. 312,
325 (1981).  Since Southerland has offered nothing more than this conclusory statement
alleging Goord's involvement, defendant Goord is dismissed from this action.

5

might be offered in support thereof.'" *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998) (quoting *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir. 1984)).

"In deciding such a motion, a district court must construe any well-pleaded factual allegations in the complaint in favor of the plaintiff, and may dismiss the complaint only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "This caution applies with greater force where the complaint is submitted *pro se* or the plaintiff alleges civil rights violations." *Sykes*, 13 F.3d at 519 (citing *Easton v. Sundram*, 947 F.2d 1011, 1015 (2d Cir. 1991)).

## 2.    *Section 1983*

Section 1983 provides a civil claim for damages against any person who, "acting under color of state law," deprives "another of a right, privilege or immunity secured by the Constitution or the laws of the United States." 42 U.S.C. § 1983. "Section 1983 itself 'creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere.'" *Sykes*, 13 F.3d at 519 (citing *City of Oklahoma*

6

*City v. Tuttle*, 471 U.S. 808, 816 (1985)).  In order to prevail on a section

1983 claim, the plaintiff must show that the defendant's conduct deprived

him of a federal right.  See *Rand v. Perales*, 737 F.2d 257, 260 (2d Cir.

1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

## 3.   *First Amendment Retaliation*

"Courts properly approach prisoner retaliation claims 'with skepticism

and particular care,' because 'virtually any adverse action taken against a

prisoner by a prison official – even those otherwise not rising to the level of

a constitutional violation – can be characterized as a constitutionally

proscribed retaliatory act.'"  *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir.

2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001),

*overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506

(2002)).  Thus, to survive a motion to dismiss, a plaintiff asserting First

Amendment retaliation claims must allege "(1) that the speech or conduct

at issue was protected, (2) that the defendant took adverse action against

the plaintiff, and (3) that there was a causal connection between the

protected speech and the adverse action."  *Dawes*, 239 F.3d at 492.  It is

well settled that retaliation against a prisoner for pursuing a grievance is

actionable under 42 U.S.C. § 1983.  *See Graham v. Henderson*, 89 F.3d

7

75, 80 (2d Cir. 1996).  "Similarly, the filing of a lawsuit is [also] a constitutionally protected activity."  *Baskerville v. Blot*, 224 F. Supp. 2d 723, 731 (S.D.N.Y. 2002) (citations omitted). Southerland satisfies the first prong for a retaliation claim by having engaged in constitutionally protected activity through the filing of his two previous lawsuits.

### A.   Lanthier

Assuming without deciding that the defendants' actions were adverse, Southerland's retaliation claim fails to satisfy the third prong of the analysis.  As mentioned, there "must be a causal connection between the protected speech and the adverse action."  *Dawes*, 239 F.3d at 492. Lanthier was not involved in the previously filed lawsuits so that the causal connection requirement for a retaliation claim is not satisfied.  Furthermore, Southerland does not allege that Lanthier was in any way connected to the sued defendants.  Accordingly, Southerland's retaliation claim against Lanthier is dismissed.

### B.   Houston

Southerland contends that Houston was a biased hearing officer. *See Am. Compl. ¶ 23, 25, 26, Dkt. No. 6*.  Southerland's argument is based on the fact that Houston was a named defendant in a previously filed

lawsuit.[8]  *See id.* ¶ *23.*  Further, two weeks prior to the hearing,

Southerland sent a letter to the TRC committee, which included Houston,

advising them that he "would" seek punitive damages for the

misinformation placed in his pre-sentence report by the TRC.  *See id.* ¶¶

*23, 26.*  Southerland maintains that Houston's decision to confine him to

SHU and take away his privileges was retaliatory.

Southerland's contentions are belied by the record.  First, Houston

was not named as a defendant in action 675 until several months following

the hearing.[9]  *See Southerland v. Breen*, 01-cv-0675, *Am. Compl., Dkt. No.

12.*  Moreover, it is unclear whether Houston even had knowledge of

Southerland's letter proposing *future* actions.  As such, Southerland has

failed to establish a causal connection between the previously filed lawsuit

and the punishment imposed.  Southerland's conclusory allegations are

insufficient to show that Houston's "punishment" was in retaliation for a

previously filed lawsuit.  Accordingly, Southerland's retaliation claim against

Houston is dismissed.

## 4.   *Due Process Violation*

---

[8]Specifically, Southerland refers to the two previously filed lawsuits in the district.  *See id.* ¶¶ *23, 48.*

[9]April 12, 2002.

In order to be awarded damages under § 1983 for an alleged violation of a liberty interest without procedural due process, an inmate must first establish that he, in fact, enjoyed a protected liberty interest. *See Ky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). Moreover, a prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Factors relevant to determining whether the plaintiff endured an "atypical and significant hardship" include "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions" and "the duration of the disciplinary segregation imposed compared to discretionary confinement." *Id.* (citing *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998)). However, the Second Circuit has cautioned that "there is no bright-line rule regarding the length or type of sanction" that meets the *Sandin* standard. *Id.* at 28. Nevertheless, the Court of Appeals has suggested that confinement for a period of less than 101 days would not constitute an atypical and significant hardship. *See Colon v. Howard*, 215 F.3d 227, 231-32 (2d Cir.

2000).[10]

Here, Southerland was confined for thirty days.  He does not allege

that the conditions of confinement were somehow "atypical or significant."

Thus, Southerland's claim fails to satisfy the *Sandin* standard.  More

specifically, he has failed to show that his confinement was an atypical or

significant hardship since his time in SHU was relatively short and he does

not allege that his segregation differed from other routine prison conditions.

Accordingly, there is no liberty interest implicated, and it is unnecessary to

determine if he received due process.   Accordingly, Southerland's Due

Process claim under the Fourteenth Amendment is dismissed.

**5.**   **Other Claims**

A.   Telephone Privileges

Southerland contends that his loss of phone privileges was a

---

[10]In *Colon*, the court discussed *Sealey v. Giltner*, 116 F.3d 47 (2d Cir. 1997), in which confinement of 101 days was held not to have met the *Sandin* standard.  *Colon*, 215 F.3d at 231-32.  Judge Newman, expressing "only [his] own views on this issue and not those of the panel," advocated "a bright-line rule that confinement in normal SHU conditions of more than 180 days meets the *Sandin* standard." *Id.* at 232.  Conversely, confinement of 180 days or less would not meet the *Sandin* standard.  Among the other reasons for his belief that a bright-line rule would be appropriate in the context of *Sandin* claims, Judge Newman observed that "the district judges of this Circuit would significantly benefit from use of a standard that would permit prompt dismissal of many cases where the facts alleged in the complaint demonstrate that the duration and conditions of confinement do not exceed an announced standard." *Id.* at 233.

violation of his rights.  Specifically, he contends that this "visitation" right[11]

with his daughter cannot be taken away because it was provided by a

family court order.  *See Am. Compl. ¶ 20, Dkt. No. 6.*  It is well settled that

"[u]nreasonable restrictions on prisoners' telephone access may violate the

First and Fourteenth Amendment."  *Pitsley v. Comm'r of Corr.*, 1998 WL

178805, at *9 (N.D.N.Y. Apr. 13, 1998) (citations omitted).  However, "[t]he

exact nature of telephone service to be provided to inmates is generally to

be determined by prison administrators, subject to court scrutiny for

unreasonable restrictions." *Washington v. Reno*, 35 F.3d 1093, 1100 (6th

Cir. 1994) (citing *Fillmore v. Ordonez*, 829 F. Supp. 1544, 1563-64 (D.Kan.

1993), *aff'd*, 17 F.3d 1436 (10th Cir. 1994); *Feeley v. Sampson*, 570 F.2d

364, 374 (1st Cir. 1978); *Jeffries v. Reed*, 631 F. Supp. 1212, 1219

(E.D.Wash. 1986)).  Here, Southerland was afforded a hearing and found

guilty during the hearing.  Accordingly, since Southerland's denial of phone

usage was punishment for violating prison rules, this denial was not

unreasonable.  Accordingly, Southerland fails to state a claim for which

relief can be granted.

    B.   *Right to Transfer*

---

[11]Southerland concedes that he calls his daughter every other week. *Am Compl. ¶ 19; Dkt. No. 6.*

"A criminal defendant who has been validly convicted 'has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution.'" *McBride v. Hallenbeck*, 587 F. Supp. 490, 491 (E.D.N.Y. 1984) (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976)). "Under New York law, adult persons sentenced to imprisonment are not sentenced to particular institutions, but are committed to the custody of the Commissioner of Corrections." *Montanye v. Haymes*, 427 U.S. 236, 243 (1976). "Because no exception to the unfettered discretion of prison officials to transfer inmates exists under New York law, no Constitutional right of plaintiff has been violated." *McBride*, 587 F. Supp. at 492.

Accordingly, Southerland's transfer request denial fails to state a claim under § 1983 and is dismissed.

C.   *Access to the Courts*

Southerland alleges that the defendants interfered with his access to court by failing to advance him copies of his court papers, interfering with his use of the library and failing to investigate the legitimacy of his constitutional right to telephone his daughter by obtaining a copy of the

13

family court order.  *See Am. Compl.* ¶¶ *31, 32, 37, 41.*  He also generally
alleges that the defendants failed to call prison inmates wishing to attend
the Law Library.  *See id.* ¶ *41.*

"In a legal deprivation claim, an inmate must proffer specific
instances of prejudice to his legal rights, such as missed filing deadlines or
the denial of legal assistance to which he was entitled." *Pitsley*, 2000 WL
362023, at *3 (citation omitted).  Without more, these allegations are
conclusory and unsupported by evidence and must fail.  *See, e.g., Barr v.
Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (complaints relying on the civil
rights statutes are insufficient unless they contain some specific allegations
of fact indicating a deprivation of rights, instead of a litany of general
conclusions that shock but have no meaning).

Here, Southerland fails to provide any facts that he was prejudiced by
missing a filing deadline or being denied legal assistance.  Instead, the
complaint states that "Madeline Delone, Esq. of prisoner right projects
[made] copies for him and forward[ed] [them] to the court." *See Am.
Compl.* ¶ *38, Dkt. No. 6.*  Likewise, his claim for limited access to the law
library fails because he has alleged no actual injury.

While Southerland states that the denial of access to the court was in

retaliation for his previously filed lawsuits, he offers nothing more than conclusory statements without any facts to support his contention.  He simply states that "the failure of the prison officials to make copies for him in advance abridged his access to the court" and that the "officer [assigned to the library] has the unbribled [sic] descretion [sic] to call whomever..." *See, e.g., Davis*, 320 F.3d at 354.  However, he shows no injury from this denial and generically asserts a claim for all prison inmates.   Accordingly, without more, these conclusory allegations are insufficient to support a claim for denial of access to the court in retaliation for previously filed lawsuits.

D.    *Conspiracy to Retaliate*

Southerland further alleges that all the defendants conspired against him by filing false "disciplinary actions" and by verbally harassing him.  *See Am. Compl. ¶ 32, Dkt. No. 6.*  The complaint, at best, is vague and fails to outline a factual basis to support a conspiracy claim.  Instead, he alleges that the defendants conspired to retaliate against him because of his previously filed lawsuits. *See id. ¶¶ 22, 32, 48.*  These are conclusory allegations without any factual support and as stated above, fail to assert a meritorious claim to satisfy any allegation of a conspiracy.  *See Leon v.*

*Murphy*, 988 F.2d 303, 311 (2d Cir. 1993) (citing *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) (per curiam)).  Accordingly, these claims may be dismissed on the pleadings.  *See id.*

      E.     <u>Harassment</u>

      Southerland alleges that Lanthier constantly harassed and made derogatory statements against him.  *See Am. Compl.* ¶ *32, Dkt. No. 6.* Specifically, he alleges that Lanthier made the following derogatory statement, "'you think your [sic] the boss isn[']t that right [S]outherland' in a malicious intentional sort of way."  *Id.*  The defendants argue that this alleged verbal abuse by Lanthier is not actionable under 42 U.S.C. § 1983. *See Defs.' Br. p. 2, Dkt. No. 20.*  They also contend that Southerland has failed to allege any injury resulting from the verbal harassment.  *See id.*  In reviewing these contentions, Southerland's arguments for harassment in violation of his constitutional rights are unavailing for the following reasons.

      First, "[p]risoners may be required to tolerate more ... than average citizens, before a [retaliatory] action taken against them is considered adverse."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999). "Insulting or disrespectful comments directed at an inmate generally do not rise to this level."  *Davis*, 320 F.3d at 353 (citing *Dawes*, 239 F.3d at 492).

Thus, "mere allegations of verbal abuse do not rise to the level of a constitutional violation, and are not cognizable under 42 U.S.C. § 1983." *Gill v. Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003) (citations omitted). Therefore, Lanthier's conduct and statement are simply "*de minimis*" and fall outside the ambit of constitutional protection. *Davis*, 320 F.3d at 353. Accordingly, Southerland's claim of harassment under § 1983 is dismissed.

> F.   *False Misbehavior Report*

It is well established that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). Instead, "there must be more, such as [a] retaliation against the prisoner for exercising a constitutional right." *Boddie*, 105 F.3d at 862 (citing *Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988)). Southerland has failed to establish a causal connection between Lanthier's misbehavior report and the defendants in the two prior lawsuits. In fact, Lanthier was not involved in those cases. Southerland simply alleges that Lanthier retaliated against him for filing two lawsuits against other "subordinates" at ACF. *See Pl.'s*

*Br. p. 1, Dkt. No. 24*.  This allegation is to demonstrate a causal link between the defendants in the two prior lawsuits and Lanthier's misbehavior report.  Accordingly, Southerland's allegation of a constitutional violation based upon Lanthier's issuance of a false misbehavior report fails to state a claim under § 1983.

      G.    *Loss of mess hall assignment*

Southerland alleges that the loss of his mess hall assignment violated his constitutional rights.  "[A] prisoner has no protected liberty interest in a particular job assignment." *Frazier v. Coughlin*, 81 F.3d 313, 318 (2d Cir. 1996).  Therefore, "inmates have no constitutional right to a particular prison assignment while incarcerated in a correctional facility." *Pitsley*, 1998 WL 178805, at *9 n.5 (citing *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987).  Accordingly, Southerland's allegation fails to state a claim under § 1983.

## IV. **Conclusion**

For the reasons stated, it is hereby

**ORDERED** that the defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) is **GRANTED** and the complaint is **DISMISSED**; and it is further,

**ORDERED** that the Clerk of the Court serve a copy of this Decision-Order upon the parties and close this case.

Dated:        April 6, 2005
              Albany, New York

                                        Gary L. Sharpe
                                        U.S. District Judge